```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COUNTRY MUTUAL INSURANCE          :    CIVIL ACTION
COMPANY as successor to           :
MIDDLESEX MUTUAL ASSURANCE        :
COMPANY a/s/o PENNLAKE REALTY     :    NO. 19-CV-0673
ASSOCIATES LP,                    :
                                  :
          Plaintiff               :
                                  :
     v.                           :
                                  :
JOHN & KAREN YOCUM                :
                                  :
          Defendants.             :
```

**MEMORANDUM AND ORDER**

JOYNER, J.                                          June 20 , 2019

Before the Court are Plaintiff, Country Mutual Insurance Company's Complaint (Doc. No. 1) alleging one count of negligence under Pennsylvania substantive law,[1] Defendants John and Karen Yocum's Motion to Dismiss (Doc. No. 7) pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's Opposition thereto (Doc. No. 8), and Defendants' Response in Support thereof (Doc. No. 9).

**I. Background**

Plaintiff provided property insurance to Pennlake Realty Associates, LP (hereinafter "subrogor") in connection with its

---

[1] "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by the Legislature in a statute or by its highest court in a decision is not a matter of federal concern." Erie Railroad Company v. Harry J. Topkins, 304 U.S. 64, 78 (1938).

1

business operations for Lakeview Terrace Apartments, 251 South Olds Boulevard in Fairless Hills, Pennsylvania (hereinafter "subject property"). Compl. ¶3. Defendants' adult daughter, Donna Yocum (hereinafter "Ms. Yocum"), resided in apartment E-83 at subject property. Compl. ¶6.

Plaintiff alleges that Ms. Yocum intentionally set a fire on February 18, 2017, that caused significant damage to subject property. Id. at ¶¶9-10. Plaintiff remitted $959,692.83 to subrogor for damage caused by the fire to subject property, pursuant to the terms of the aforementioned insurance policy. Def. Mot. at 2.

The focal point of Plaintiff's Complaint is the allegation that Defendants' "familial and custodial relationship" to Ms. Yocum created a legal duty to guard against Ms. Yocum's "potential, penchant, [and] proclivity . . . to commit arson . . . ." Compl. ¶¶14-18. Plaintiff requests judgment in the amount remitted to subrogor, plus costs incident to this suit, delay damages, and attorney fees. Defendants filed a timely Motion to Dismiss pursuant to Rule 12(b)(6).

**II. Legal Standard**

In deciding whether a complaint survives a motion to dismiss pursuant to Rule 12(b)(6), the court must find it to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v.

2

Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Jaroslawicz v. M&T Bank Corp., 912 F.3d 96, 104 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Legal conclusions are not sufficient, but the antecedent facts must be assumed true and, moreover, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."); see also Iqbal, 556 U.S. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)) ("But where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"). Essentially, the complaint must contain facts sufficient to formulate a legally cognizable claim after the Court conducts an analysis consisting of: (1) bifurcating the factual elements and legal conclusions; and (2) analyzing whether the facts alleged are sufficient to maintain a cause of action. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

**III. Discussion**

In concert with Iqbal, we "begin . . . by identifying the allegations in the complaint that are not entitled to the assumption of truth." 556 U.S. at 680. This involves locating the pleadings that "are no more than conclusions." Id. at 679. To overcome the limiting aspect of a conclusory statement, the facts must demonstrate the pleader is entitled to the prayer for relief. Id.

To maintain a cause of action in negligence, "the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." Martin v. Evans, 551 Pa. 496, 502 (1998). Negligence is regularly defined as the absence of ordinary care that a reasonably prudent person would exercise under similar circumstances. Id. And, notably, the primary inquiry concerning a claim of negligence is whether a duty existed. Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214, 222 (Pa. 2018) (citing Phillips v. Cricket Lighters, 841 A.2d 1000, 1008 (Pa. 2003)).

Here, Plaintiff pleads the "familial and custodial relationship" between Defendants and Ms. Yocum imposed a duty upon Defendants to guard against Ms. Yocum's conduct. Compl. ¶16. Thus, by knowing Ms. Yocum's "potential, penchant,

proclivity, and ability to commit arson would place the subrogor's property at risk of foreseeable harm," Plaintiff avers that Defendants breached their duty of care by "engaging in conduct that created a foreseeable likelihood of damages to Plaintiff's real property." Id. at ¶¶14-16. The conduct averred consisted of "allowing Ms. Yocum to be left alone and unsupervised despite knowing the risk of harm she was capable of and inclined toward." Id. at ¶17.

### A. *The Custodial Relationship*

"It is hornbook law that recovery in a negligence claim is not available unless the defendant owes a duty of care to the plaintiff" and, as a basic principle, there is no duty to guard against third-party conduct. Linebaugh v. Ellis, 1992 WL 334027 (E.D. Pa. Nov. 6, 1992); see Brisibine v. Outside In School of Experiential Education, Inc., 799 A.2d 89, 93 (Pa. Super 2002) (stating that, in general, there is no duty to guard against third-party conduct). However, a custodial, or special relationship between the defendant and third person creates an exception. Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 40 (Pa. Super 2000); see RESTATEMENT (SECOND) OF TORTS §315 (1965) (stating there is no duty to protect against third-party harm unless a special relationship exists that imposes a duty upon the individual to control the third person's conduct).

5

> A special relationship is limited to the relationships described in Sections 316-319 of the Restatement (Second) of Torts. See Brezenski, 755 A.2d at 40-41. The enumerated relationships specified in the Restatement are a parent's duty to control a child (Section 316); a master's duty to control a servant (Section 317); a possessor of land's duty to control a licensee (Section 318); and the duty of those in charge of individuals with dangerous propensities to control those individuals (Section 319).

Brisibine, 799 A.2d at 93.

In the current matter, only § 319 is reasonably applicable as Plaintiff claims Defendants had a duty to protect against their adult offspring's dangerous propensity for arson.[2] Notwithstanding the applicability of § 319, matters arising under § 316 lend a relevant basis for analyzing cases where parents have indeed been held responsible for their minor child's conduct.[3] It is important to note, though, that under § 319, "bodily harm," not "property damage," is the salient conduct, but, evidently, the above dicta in Brisibane indicates the Court may be willing to extend the breadth of § 319's scope to impose upon parents a broader duty to control their adult offspring's conduct if charged with caring for them. Id. For example, if parents decide to keep an "emotionally disturbed adult child who has a fascination with fire and a history of

---

[2] See RESTATEMENT (SECOND) OF TORTS § 319 (1965) ("One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.").
[3] See RESTATEMENT (SECOND) OF TORTS § 316 (1965) (indicating the circumstance under which a parent has a duty to exercise reasonable care to guard against her child's intentionally harming another is when the parent (a) knows she has the ability to control her child and (b) knows or should know of the necessity and opportunity for exercising such control).

6

setting fires" at their home instead of an institution, the parents "must take preventative measures to protect others from the possibility of a fire."  Joan Morgridge, <u>When Does Parental Liability End?: Holding Parents Liable for the Acts of Their Adult Children</u>, 22 Loy. U. Chi. L.J. 335, 358-59 (1990).  <u>But see</u> <u>Kazlauskas v. Verrochio</u>, No. 3:14-CV-1567, 2014 WL 5463866, at *6 (M.D. Pa. Oct. 27, 2014) (stating <u>Brisibine</u> does not expand the duty of a parent to encompass supervision of adult children).

### *B. Analysis*

A duty of reasonable care can be imposed on a parent to guard against her child's intentional harming of others when that harm is a "natural and probable consequence" of the parent's actions. <u>Keener v. Hribal</u>, 351 F. Supp. 3d 956, 965-66 (W.D. Pa. 2018); <u>see</u> <u>Condel v. Savo</u>, 350 Pa. 350, 352 (1944) (stating the harm caused by the child must be a "natural and probable" result of the parent's conduct).  In <u>Keener</u>, Alexander Hribal, the minor son of Tina and Harold Hribal, stabbed twenty of his high school classmates, including the plaintiff, Gregory Keener.  351 F. Supp. 3d at 962.  Gregory brought a claim of negligence against Tina and Harold for failing to prevent the attack despite knowing of their son's mental illness and propensity for violence.  <u>Id.</u> at 965.  The Court found the claim legally sufficient to survive a challenge under Rule 12(b)(6)

7

because the complaint alleged the parents were not only aware of their son's mental illness and propensity towards violence, but also alleged the parents knew, or should have known, of their son's written manifesto wherein he plotted his actions. Id. at 966.

A parent merely possessing knowledge of an adult offspring's "reckless disposition" is not sufficient to establish liability. Estate of O'Loughlin ex rel. O'Loughlin v. Hunger, No. CIV.A. 07-1860, 2009 WL 1084198, at *6 (E.D. Pa. Apr. 21, 2009) (citing Olszanowski v. Chase, 40 Pa. D. & C.3d 258 (Pa. Com. Pl. 1985)). In Estate of O'Loughlin, Mrs. Hunger's twenty-five-year-old son stole her car and crashed into plaintiff's vehicle. 2009 WL 1084198. at *1. Thereafter, Mrs. O'Loughlin passed away due to heart-related issues, allegedly triggered by the accident. Id. Mr. O'Loughlin claimed Mrs. Hunger acted negligently by leaving her car keys on the kitchen table when she knew her son had legal problems stemming from drugs, alcohol, and car theft. Id. at *5. The Court dismissed plaintiff's claim of negligence noting that nothing in the record established the son's drug and alcohol use was ongoing or occurring on the day of the accident, and, more importantly, that no evidence of prior similar incidents were presented. Id. at *6; see also DeJesus v. U.S. Dept. of Veterans Affairs, 479 F.3d 271, 281 (3d Cir. 2007) (stating no duty to control third-

8

party conduct exists unless a special relationship imposes such a duty upon defendant to control the third person's conduct).

Here, we find that Plaintiff has not alleged facts sufficient to impose a duty of care upon Defendants to guard against Ms. Yocum's conduct.

Unlike Keener, where the child was a minor living with his parents, and plotted the attack in a manifesto that the parents either knew, or should have known about, here, no facts create a semblance of duty upon Defendants for the actions of their adult offspring with whom they did not reside. See 351 F. Supp. 3d at 966-67; Compl. ¶5. Plaintiff, at the very least, should meet the requisite level of facts to support a claim under § 319 of the Restatement (Second) of Torts, not the less burdensome standard of § 316, as was the case in Keener. See 351 F. Supp. 3d at 965-66.

Similar to Estate of O'Loughlin, where Mrs. Hunger's mere knowledge of her adult son's "reckless disposition" was insufficient to impose a duty of care to guard against his conduct, here, Defendants appear to have nothing more than the simple knowledge of their adult daughter's "potential . . . proclivity, and ability to commit arson . . . ." See 2009 WL 1084198, at at *6; Compl. ¶15. A "proclivity" to start fires is substantially similar to a "reckless disposition," therefore, in accord with the decision in Estate of O'Loughlin, here, for a

9

duty of care to guard against Ms. Yocum's conduct to be imposed, the facts must indicate Defendants were more than simply aware of Ms. Yocum's disposition.

Accordingly, because the alleged negligence is predicated upon Defendants' duty to guard against Ms. Yocum's conduct, the focal question of whether a custodial relationship did, in fact, exist between Defendants and their adult daughter must be pleaded with sufficient factual support.  As Plaintiff has presented no facts to suggest the existence of such a relationship—under § 319 of the Restatement (Second) of Torts or otherwise—the claim can categorically be defined as a "naked assertion . . . without [] further factual enhancement" and not entitled to the assumption of truth.  <u>Twombly</u>, 550 U.S. at 557.

**IV. Conclusion**

The Court GRANTS Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) and grants Plaintiff Leave to Amend the Complaint, pursuant to Rule 15(a)(2), within 21 days of receiving the following ORDER.